UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TICH PHAM, aka TICH THI PHAM,      )      No. EDCV 08-1479-RC
                                   )
            Plaintiff,             )
                                   )      OPINION AND ORDER
     v.                            )
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
            Defendant.             )
_____)

     Plaintiff Tich Pham, aka Tich Thi Pham, filed a complaint on

October 22, 2008, seeking review of the Commissioner's decision

denying her application for disability benefits.  On March 27, 2009,

the Commissioner answered the complaint, and the parties filed a joint

stipulation on May 6, 2009.


                            **BACKGROUND**

     On December 3, 2004 (protective filing date), plaintiff filed an

application for disability benefits under Title II of the Social

Security Act ("Act"), 42 U.S.C. § 423, claiming an inability to work

since April 20, 2003, due to "severe radiating pain in left arm,

surgery [on her] left arm, pain in [her] right arm, and depression[.]"
Certified Administrative Record ("A.R.") 23, 76, 79-80.  The
plaintiff's application was initially denied on March 22, 2005, and,
following reconsideration, was denied again on June 2, 2005.  A.R. 59-
71.  The plaintiff then requested an administrative hearing, which was
held before Administrative Law Judge F. Keith Varni (the "ALJ") on
November 30, 2006, and on March 26, 2007.  A.R. 72-73, 398-428.  On
April 10, 2007, the ALJ issued a decision finding plaintiff is not
disabled.  A.R. 21-30.  The plaintiff appealed this decision to the
Appeals Council, which denied review on September 9, 2008.  A.R. 4-16.


**DISCUSSION**

**I**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
review the Commissioner's decision denying plaintiff disability
benefits to determine if substantial evidence supports the
Commissioner's findings and whether the proper legal standards were
used in reaching the decision.  Vasquez v. Astrue, 572 F.3d 586, 591
(9th Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir.
2009).  The claimant is "disabled" for the purpose of receiving
benefits under the Act if she is unable to engage in any substantial
gainful activity due to an impairment which has lasted, or is expected
to last, for a continuous period of at least twelve months.  42 U.S.C.
§ 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the
burden of establishing a prima facie case of disability."  Roberts v.
Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
(1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).
//

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities.  20 C.F.R. § 404.1520(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. § 404.1520(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.[1]  20 C.F.R. § 404.1520(g).

---

[1]  Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. § 404.1520a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R.

1    Applying the five-step sequential evaluation process, the ALJ

2  found plaintiff has not engaged in substantial gainful activity since

3  April 20, 2003, the alleged onset of disability.  (Step One).  The ALJ

4  then found plaintiff "has the following severe combination of

5  impairments:  right carpal tunnel syndrome, residuals of left cubital

6  tunnel release with anterior transposition of the ulnar nerve, early

7  left frozen shoulder syndrome, and depressive disorder not otherwise

8  specified"; however, plaintiff does not have a severe mental

9  impairment, (Step Two), and she does not have an impairment or

10  combination of impairments that meets or equals a Listing.  (Step

11  Three).  The ALJ next determined plaintiff cannot perform her past

12  relevant work as a supermarket cashier.  (Step Four).  Finally, the

13  ALJ concluded plaintiff can perform a significant number of jobs in

14  the national economy; therefore, she is not disabled.  (Step Five).

15

16                                    **II**

17    A claimant's residual functional capacity ("RFC") is what she can

18  still do despite her physical, mental, nonexertional, and other

19  limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);

20  see also Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 689 (9th

21  Cir. 2009) (RFC is "a summary of what the claimant is capable of doing

22  (for example, how much weight he can lift).").  Here, the ALJ found

23  § 404.1520a(d).  Fourth, when a mental impairment is found to be

24  severe, the ALJ must determine if it meets or equals a Listing.
    20 C.F.R. § 404.1520a(d)(2).  Finally, if a Listing is not met,

25  the ALJ must then perform a residual functional capacity

26  assessment, and the ALJ's decision "must incorporate the
    pertinent findings and conclusions" regarding plaintiff's mental

27  impairment, including "a specific finding as to the degree of
    limitation in each of the functional areas described in

28  [§ 404.1520a(c)(3)]."  20 C.F.R. § 404.1520a(d)(3), (e)(2).

4

1  plaintiff retains the physical RFC to: occasionally lift and/or carry

2  up to 20 pounds, push and/or pull with her upper extremities, and

3  handle, finger and feel; frequently lift and/or carry up to 10 pounds,

4  balance, kneel, crouch and stoop; never climb or crawl; there is no

5  restriction in sitting, standing, walking, reaching, seeing, hearing,

6  or speaking, and no environmental limitations other than plaintiff

7  should not be exposed to vibrations.  A.R. 26, 387-90.[2]  As for

8  plaintiff's mental RFC, the ALJ found plaintiff was: slightly-to-

9  moderately limited in her ability to understand and remember detailed

10 instructions and interact appropriately with the public, supervisors,

11 and co-workers; slightly limited in her ability to carry out detailed

12 instructions and make judgments on simple work-related decisions;

13 mildly impaired in her ability to comply with job rules such as safety

14 and attendance due to some possible mild problems with concentration

15 and memory; and not limited in her ability to understand, remember or

16 complete simple instructions, respond to changes in the normal

17 workplace setting, maintain persistence and pace in a normal workplace

18 setting, and respond appropriately to work pressures in a usual work

19 setting.  A.R. 26, 374-78.

20

21      The plaintiff contends the ALJ's findings are not supported by

22 substantial evidence because, among other reasons, the ALJ did not

23 consider the opinions of examining physicians Keola G. Chun, M.D., an

24 orthopedic surgeon, and Louis Fontana, M.D., a psychiatrist.  The

25

26 _____

27      [2]  The ALJ did not specifically list plaintiff's physical or
   mental limitations, but instead adopted the opinions of examining
   physicians Thomas R. Dorsey, M.D., an orthopedist, and Linda
28 Smith, M.D., a psychiatrist.  A.R. 26.

1 │ plaintiff is correct.

2 │

3 │     "[T]he ALJ may only reject . . . [an] examining physician's

4 │ uncontradicted medical opinion based on 'clear and convincing

5 │ reasons[,]'" <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155,

6 │ 1164 (9th Cir. 2008) (citation omitted); <u>Widmark v. Barnhart</u>, 454 F.3d

7 │ 1063, 1066 (9th Cir. 2006), and "[e]ven if contradicted by another

8 │ doctor, the opinion of an examining doctor can be rejected only for

9 │ specific and legitimate reasons that are supported by substantial

10 │ evidence in the record." <u>Regennitter v. Comm'r of the Soc. Sec.</u>

11 │ <u>Admin.</u>, 166 F.3d 1294, 1298-99 (9th Cir. 1999); <u>Ryan v. Comm'r of Soc.</u>

12 │ <u>Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008).  Here, the ALJ did not

13 │ discuss the opinions of Drs. Chun and Fontana, and did not provide any

14 │ reasons for rejecting their opinions, as he did inferentially by

15 │ making findings that conflict with them.

16 │

17 │     On June 16, 2004, Dr. Chun conducted a qualified medical

18 │ examination of plaintiff, diagnosed her as having left ulnar nerve

19 │ transposition and neurolysis[3] performed August 21, 2003, persistent

20 │ left hand pain, and right carpal tunnel syndrome, and opined plaintiff

21 │ is precluded from forceful strength activities and repetitive

22 │ manipulation with her left hand and from performing fine manipulation,

23 │ repetitive keying activities and repetitive motion of the wrist with

24 │ _____

25 │    [3] Neurolysis is "1. release of a nerve sheath by cutting it
   │ longitudinally.  2. the operative breaking up of perineural
26 │ adhesions. 3. the relief of tension upon a nerve obtained by
   │ stretching. 4. destruction or dissolution of nerve tissue;
27 │ sometimes done as a temporary or permanent measure for the relief
   │ of pain or spasticity."  <u>Dorland's Illustrated Medical</u>
28 │ <u>Dictionary</u>, 1210 (29th ed. 2000).

her right hand.  A.R. 211.  Dr. Chun also found plaintiff was an appropriate candidate for carpal tunnel release surgery.  A.R. 210.

On February 12, 2005, Dr. Fontana examined plaintiff, diagnosed her with a moderate-to-severe major depressive disorder, single episode, with chronic psychotic symptoms, and determined plaintiff's Global Assessment of Functioning ("GAF") was 55.[4]  A.R. 215-18.  Dr. Fontana concluded:

> The [plaintiff] should be able to perform simple and repetitive tasks but would have difficulty with more detailed and complex tasks.  She should be able to accept instructions from supervisors and interact with coworkers and the public.  She should be able to perform work activities on a consistent basis.  She should be able to maintain regular attendance in the workplace and complete a normal workday and workweek.

A.R. 217.

The ALJ, in his opinion, found plaintiff retains the RFC to occasionally perform work involving handling, fingering, and feeling,

//

---

[4]  A GAF of 55 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

and her ability to reach is unlimited.[5]  A.R. 26, 389.  Yet, the ALJ

failed to address the inconsistency between these findings and Dr.

Chun's opinions that plaintiff cannot perform fine manipulation with

her right hand or repetitive motions with her right wrist.  Similarly,

the ALJ also failed to address Dr. Fontana's opinions in assessing

plaintiff's mental RFC.[6]  A.R. 26-29.  These omissions were legal

error, Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir.

2007); Smolen, 80 F.3d at 1286, and they were not harmless.  See Stout

v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006)

("[A]n ALJ's silent disregard of [evidence] about how an impairment

_____

[5]  Reaching means "extending the hands and arms in any direction."  SSR 85-15, 1985 WL 56857, *7 (S.S.A.); see also U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C, C-3 (1993) (same).

[6]  Although the Joint Stipulation focuses on Steps Four and Five of the sequential analysis, the ALJ's total failure to discuss Dr. Fontana's opinions means the ALJ's Step Two conclusion that plaintiff's mental impairment is not severe is not supported by substantial evidence.  Although an ALJ need not discuss a GAF score in all instances, Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002), he must do so when, as here, he has not provided any rationale for otherwise rejecting a treating or examining psychiatrist's opinion of a claimant's overall mental functioning, and such opinion – as expressed in a GAF score – conflicts with the Step Two finding regarding the claimant's mental functioning.  See, e.g., Samuel v. Barnhart, 295 F. Supp. 2d 926, 952 & n.15 (E.D. Wis. 2003) (Examining physicians' opinions and GAF show claimant "had a severe impairment" and "he would have moderate difficulty in social, occupational or school functioning"; thus, "an examining physician's assessment of the claimant's ability to function cannot be ignored, particularly at step two."  (citation omitted)); Bennett v. Barnhart, 264 F. Supp. 2d 238, 255 (W.D. Pa. 2003) (Contrary to ALJ's Step Two determination that plaintiff did not have a severe mental impairment, "a GAF score of 55 to 60 suggests . . . a mental impairment that is 'severe' in nature.").

limits a claimant's ability to work was [not] harmless."); <u>Widmark</u>,
454 F.3d at 1069 n.4 ("Because . . . the ALJ's error in rejecting [the
examining physician's] opinion ultimately led to an adverse disability
finding, it was not harmless.").

Moreover, although the ALJ found plaintiff has mental
limitations, he did not include those limitations in his hypothetical
questions to the vocational expert.  This, too, was legal error, <u>see</u>
<u>Valentine</u>, 574 F.3d at 690 ("The hypothetical an ALJ poses to a
vocational expert, which derives from the RFC, 'must set out all the
limitations and restrictions of the particular claimant.'"); <u>Thomas v.</u>
<u>Barnhart</u>, 278 F.3d 947, 956 (9th Cir. 2002) ("In order for the
testimony of a [vocational expert] to be considered reliable, the
hypothetical posed must include 'all of the claimant's functional
limitations, **both physical and mental**' supported by the record."
(emphasis added)), which was not harmless.  <u>See</u> <u>Matthews v. Shalala</u>,
10 F.3d 678, 681 (9th Cir. 1995) ("If a vocational expert's
hypothetical does not reflect all the claimant's limitations, then the
'expert's testimony has no evidentiary value to support a finding that
the claimant can perform jobs in the national economy.'" (quoting
<u>Delorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991))); <u>Lewis v.</u>
<u>Apfel</u>, 236 F.3d 503, 517 (9th Cir. 2001) (same).[7]

---

[7]   The Dictionary of Occupational Titles ("DOT"), which is
the Commissioner's primary source of reliable vocational
information, <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 n.6 (9th Cir.
1995), provides that the positions of storage facility clerk (DOT
no. 295.367-026), counter clerk (DOT nos. 249.366-010), and
ticket worker (DOT nos. 211.467-030 (ticket seller) or 344.667-
010 (ticket taker)) -- all jobs vocational expert Joseph Mooney
testified plaintiff could perform, A.R. 423-24 -- require

1

### III

2  Since substantial evidence does not support either the ALJ's RFC

3 determination or Step Five conclusion, the Court has authority to

4 affirm, modify or reverse the Commissioner's decision "with or without

5 remanding the cause for rehearing."  42 U.S.C. § 405(g); McCartey v.

6 Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).  "Remand for further

7 administrative proceedings is appropriate if enhancement of the record

8 would be useful."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir.

9 2004).  Here, remand is appropriate so the ALJ can address all

10 pertinent medical evidence in the record, augment the record if

11 necessary and properly assess plaintiff's RFC to determine whether she

12

13 _____

14 reaching and/or fingering (fine manipulation) greater than the
limitations Dr. Chun found plaintiff could perform.  See U.S.

15 Dep't of Labor, Dictionary of Occupational Titles, 217, 234, 253
(4th ed. 1991); U.S. Dep't of Labor, Selected Characteristics of

16 Occupations Defined in the Revised Dictionary of Occupational
Titles, 333, 365, 369 (1993).  Additionally, the storage facility

17 clerk and ticket seller positions require a reasoning level of 3,
which is greater than the reasoning required for the simple

18 repetitive tasks Dr. Fontana found plaintiff could perform.  See

19 Dictionary of Occupational Titles at 184, 234; Hackett v.
Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (A limitation to

20 simple and routine work tasks "seems inconsistent with the
demands of level-three reasoning.").  Further, the position of

21 school bus monitor (DOT no. 372.667-042) clearly requires working

22 with the public, Dictionary of Occupational Titles at 269, and,
absent vocational expert testimony, it is unclear how the

23 "slight-to-moderate" limitation the ALJ found in plaintiff's
ability to work with the public would affect her ability to

24 perform this position.  Finally, the ALJ acted as his own
vocational expert and gratuitously noted several other jobs he

25 opined plaintiff could perform, see A.R. 30 ("Although the
vocational expert did not cite them I would add the unskilled

26 jobs of information clerk and surveillance-security monitor."),

27 which is clearly improper.  See Tommasetti v. Astrue, 533 F.3d
1035, 1042 (9th Cir. 2008) (ALJ's "own speculation" does not

28 constitute substantial evidence supporting ALJ's conclusion).

//

is able to perform other work in the national economy.[8]   <u>Carmickle</u>,

533 F.3d at 1167; <u>Widmark</u>, 454 F.3d at 1070.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is

granted; and (2) the Commissioner's decision is reversed, and the

action is remanded to the Social Security Administration for further

proceedings consistent with this Opinion and Order, pursuant to

sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered

accordingly.

DATE:  <u>January 12, 2010</u>          <u>/S/  ROSALYN M. CHAPMAN</u>
                                        ROSALYN M. CHAPMAN
                                   UNITED STATES MAGISTRATE JUDGE

---

[8]  Having reached this conclusion, it is unnecessary to
reach the other claims plaintiff raises, none of which warrant
any further relief than herein granted.

R&R-MDO\08-1479.mdo
1/12/10